# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—MAY TERM, 1895.

## Oakford & Fahnestock v. James Dunlap.

1. SALES—*To Creditors by Persons in Insolvent Circumstances.*—A sale of his goods by an insolvent merchant to a creditor is valid as between them and such insolvent may lawfully prefer a creditor to the extent of his claim and pay him in goods at a fair price, however it may affect his other creditors or whatever may have been his intention known or unknown to such creditor.

2. DEBTOR AND CREDITOR—*Right to Prefer One or More Creditors.*— A debtor may indulge his preferences among his creditors and so pay some or only one, although he knows the effect must be to hinder, delay or defeat the others and deliberately intends to produce such effect. The creditor so preferred may lawfully receive it although fully aware of the effect and apprised of his debtor's intention as to others, provided only that he takes it in good faith as payment of his debt.

3. FRAUDULENT SALES—, *Void as to Creditors—Vendee Not Protected.* —A purchaser of goods from an insolvent person with knowledge that the effect of his purchase is to hinder and delay the creditors of such person and that such was his intention in making the sale, though for cash and at a fair price, can not hold it against the creditors of the vendor.

4. SAME—*Fraudulent as to Part—So as to All.*—Where the property transferred by a debtor in failing circumstances is divisible into parts, one part having no necessary connection as property with the other, and a creditor takes one part in payment of his debt and purchases the other for cash or some other valuable consideration paid or agreed to be paid, such creditor takes the latter part of the property as a purchaser, and

(498)

Oakford & Fahnestock v. Dunlap.

having taken both parts by one and the same contract, if the transaction is fraudulent as to either part, it is so as to both.

**Trial of the Right of Property.**—Appeal from the Circuit Court of McLean County; the Hon. Thomas F. Tipton, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed December 6, 1895.

*Instructions referred to in the opinion of the court:*

2. You are instructed that if Royster owed James Dunlap a note for $709 as claimed, and an account for about $90.66 as claimed, and if James Dunlap assumed the payment of $620 due Smith-Wallace Shoe Co., and a note of $189 due Lydia Witham from Royster, and if James Dunlap executed and gave his note to Royster for the balance of the invoiced price of said stock of goods, then such considerations, if in good faith, were as valid for the purchase of said goods by Dunlap as if he had paid for them in cash, or in any other way.

7. You are instructed that even if you believe from the evidence that what George W. Royster did in selling his stock of goods to James Dunlap was in bad faith and wrongful to his creditors, yet if you further believe from the evidence that James Dunlap acted in good faith and paid a valuable consideration for said goods by canceling a note of his own and assuming debts of Royster and giving his (Dunlap's) note for the balance, then the claimant, Dunlap, is not bound by such bad faith and wrongful acts of Royster, if any, not participated in by Dunlap.

9. You are instructed that if you believe from the evidence that claimant, James Dunlap, acted in good faith and upon a *bona fide* and valuable consideration in buying Royster's stock of goods, and participated in no fraudulent purpose, if any existed on the part of Royster, in that case the sale to Dunlap can not be defeated by any such fraudulent purpose as may have existed on the part of Royster alone.

Kerrick, Spencer & Bracken, attorneys for appellant.

Every gift, grant, conveyance, assignment, or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder, or defraud creditors, or other persons, * * * shall be void as against such creditors, purchasers and other persons. Illinois R. S., Chap. 59, Sec. 4; Starr & Curtis, Vol. 1, page 1196.

To delay and hinder creditors in the collection of their claims, is to defraud them. Weber, use, etc., v. Mick, 131 Ill. 520.

Every conveyance of property, real or personal, made for the purpose of delaying, hindering or defrauding creditors,

is by the statute of frauds and perjuries declared to be void as against such creditors. If a conveyance is made with such fraudulent intent and object, it is not purged of fraud because there may also have been some other purpose in view, such as the discharge of the debt due the grantee. Hansen v. Dennison, 7 Ill. App. 77.

Where a debtor sells property with the intent to hinder, delay, or defraud his creditors, notice to the purchaser of the debtor's fraudulent intent is *per se* evidence of *mala fides*, and renders the sale void without reference to the purchaser's actual intent, the fraudulent motive of the debtor being imputed to the purchaser. Hanchett v. Goetz, 25 Ill. App. 445; 40 Ill. App. 207.

A transaction is not purged of fraud because such intent was not the sole purpose of the parties to the transaction. Levy v. Reitz, 25 Ill. App. 619; Merry v. Bostwick, 13 Ill. 398-410; Boies v. Henney, 32 Ill. 130; Reed v. Noxon, 48 Ill. 323; Strohn v. Hayes, 70 Ill. 41; Hansen v. Dennison, 7 Ill. App. 73.

Even though the grantee or assignee pays a valuable, adequate and full consideration, yet, if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effecting such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. Beidler v. Crane et al., 135 Ill. 99.

While it may be that a debtor, acting in good faith under certain circumstances, can lawfully prefer one creditor in payment of his claim to the exclusion of other creditors, yet a transaction entered into to give certain creditors the benefit of such a preference by transferring to them all the available assets of the debtor, and in value greatly exceeding the amount of the preferred debts, with the power to sell and dispose of such assets, without accounting for the proceeds and without providing for the payment of debts due other creditors out of the surplus, and coupled with an intent and purpose on the part of the debtor, in making such transfer,

to hinder and delay his other creditors in the collection of their debts, is fraudulent and void. Thorne v. Crawford, 17 Ill. App. 398.

If the purchaser from a fraudulent vendor buys with notice of the fraudulent intent of his vendor, he stands in his vendor's shoes, and notice may be inferred from the existence of certain facts and circumstances that would place a man of ordinary prudence on inquiry with reference to the conduct of his vendor. Thompson et al. v. Duff, 19 Ill. App. 78; Cowling v. Estes, 15 Ill. App. 260; Bump on Fraud. Con., 2d Ed., 200; Gradle v. Kern, 109 Ill. 563.

Direct and positive evidence that the grantee of property is guilty of participating in the fraudulent intent of the grantor in making a sale to defraud creditors, is not required in order to avoid a sale. Fraud on the part of the grantee, or purchaser, may be shown by facts and circumstances from which it may be inferred. Treadwell v. McEwen, 123 Ill. 253.

As to the notice to be brought home to a purchaser, in order to charge him with knowledge of his vendor's fraud, see Doyle v. Teas, 4 Scammon, 202; Rupert v. Marks, 15 Ill. 540; Merrick v. Wallace, 19 Ill. 486; Morrison v. Kelley, 22 Ill. 610; Hatch v. Bigelow, 39 Ill. 546; Harper v. Ely, 56 Ill. 179; Babcock v. Lisk, 57 Ill. 327; Burt v. Coleman, 89 Ill. 364; Railroad Co. v. Kennedy, 70 Ill. 350; Life Ins. Co. v. Ford, 89 Ill. 252.

LILLARD & WILLIAMS, and FRANK GILLESPIE, attorneys for appellee.

Notice to or knowledge of the fraudulent intent of a grantor to defraud other creditors carried home to the grantee, avails nothing if such grantee, in taking the property, is actuated by a desire in good faith to receive payment of an honest debt. Windmiller v. Chapman, 38 Ill. App. 282; Gray v. St. John, 35 Ill. 222; Weber v. Mick, 131 Ill. 526.

The consideration of Dunlap's own note and claims against Royster is admitted by appellants' brief to be good,

and is held by the courts to be good. Schroder v. Walsh, 120 Ill. 403.

The consideration of Dunlap's paying the Smith-Wallace Shoe Co. and Lydia Witham notes against Royster was good. Wood v. Clark, 121 Ill. 366; Kuhlenbeck v. Hotz, 53 Ill. App. 680.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment on a verdict for the claimant on a trial of the right of property. The facts, in outline, are as follows:

George W. Royster was conducting a general mercantile business in the village of Anchor, in the course of which he became indebted to appellants and other parties. Among them was his step-father-in-law, the appellee, who was farming in Indiana. In June, 1894, an agent of the Smith-Wallace Shoe Co., a creditor to the amount of $620, came to Anchor to get a settlement, which Royster did not then make to his satisfaction, but went to Indiana and told his trouble to Dunlap, who accompanied him on his return and on the 11th of June received from him a bill of sale of the stock which was substantially all the property he had, for the cost price of $2,831.99, at which it was invoiced. This he paid by cancellation of his own claim, amounting to $799.66, assuming the debt to the Smith-Wallace Shoe Co. of $620, and a note held by Mr. Witham for $189, and giving his own note payable in one year for the balance of $1.223.33.

While this invoice was being taken by the parties and Mr. Noll—Royster's clerk—which was from one to two o'clock in the morning until some time in the afternoon of June 11th—the store was closed. Upon reopening, Dunlap remained in and about it, made one or two sales, told several that he had bought out the store, took a lease of the building and hired Noll for his clerk. Early the next morning he left for Indiana to look after his harvest, with directions to Noll to advise him at once if the creditors did anything, and intending to return and carry on the store as soon as he

could make the necessary arrangement. He had previously been in that business for about a year.

On the 15th of June, while Dunlap was absent, appellants, who were creditors of Royster to the amount of $283.50, sued out of the County Court a writ of attachment against his goods which was levied on this stock, and at the August term following obtained judgment by default and an award of special execution. Dunlap then commenced this proceeding under the statute to try the right of property. Other attachments out of the same court had in the meantime been issued and levied upon the same goods. He gave notice of his claim in those cases also, and all were tried together by the court without a jury. The result was a judgment for the claimant, from which an appeal was taken to the Circuit Court, where, on trial by a jury, the same result followed, and this further appeal.

The sale from Royster to Dunlap was undoubtedly valid as between them. Nor is it denied that Royster's debt to Dunlap as claimed was *bona fide*, nor that he might lawfully prefer him to the extent of that claim and pay him in goods at a fair price, however it might affect his other creditors, or whatever may have been his intention, known or unknown to Dunlap, with respect to them. But it is insisted that by transferring other goods and receiving in payment therefor his note, due in one year, he necessarily hindered and delayed his other creditors in the collection of their debts by putting these goods and their proceeds beyond their reach and is therefore to be charged with having intended that effect; and that Dunlap either knew directly or was put upon inquiry by which he would have known that such was his intention, and is therefore to be charged with having participated in it.

Upon such a state of facts the sale should be held fraudulent and void as to those creditors.

The law makes a distinction between transfers of property by an insolvent debtor to a creditor, in payment of his debt, and to a purchaser who is not a creditor, for a price received or to be received. In its application as pay-

ment he may indulge his preference among creditors, on whatever ground, and so pay some or only one, though he knows the effect must be to hinder, delay or defeat others and deliberately intends to produce it. And the creditor so preferred may lawfully receive it, though he may be fully aware of the effects and apprised of his debtor's intention as to others, provided only that he receives it in good faith as payment of his claim. But a purchaser with knowledge of such effect and intention, though for cash and at a fair price, can not hold it against creditors of the vendor. In the one case the debtor divests himself of so much of his property to pay only what he justly owes. In the other he really divests himself of none, but only so changes its form as to put it beyond the reach of his creditors against his own will; in other words he conceals it, with the intention of hindering or delaying them in the collection of their just dues, and the purchaser knowingly aids him in the execution of the fraudulent purpose.

When the property transferred is clearly divisible, one part having no necessary connection as property with the other, as two horses, or two tracts of land, and the transferee takes one for his debt and the other for cash or some other valuable consideration, paid or agreed to be paid or delivered to or for the transferrer, he takes the latter as a purchaser no less so than if he had taken it by a separate contract at another time. He can not escape the liability of a strict purchaser on the ground that it was so related to the other as to enhance its value. Having taken both by one and the same contract, if it was fraudulent as to either it tainted the whole transaction.

Such we understand to be the law applicable to this case, but are compelled to the conclusion that the jury did not. There can be no reasonable doubt that of a large proportion, being a clearly distinguishable part of the goods in question, appellee was strictly and only a purchaser. It may be doubted whether he was an antecedent creditor as to more than $800. If what he assumed to pay the shoe company and Mrs. Witham had any existence as a debt

from Royster to him before the sale was consummated, its assumption was with a view to its being a part or condition of the contract of sale, and we are therefore inclined to think it was not an antecedent debt—such as might have been contracted under different and justifying circumstances. But however that may be, there was a purchase for another and new consideration of at least $1,233.33 worth of goods, distinguishable and divisible from all other that was included in the sale. It was not for him to say that he would not be so likely to realize for the other, separated from this, the full amount he allowed for it as if the stock was kept unbroken. He didn't take the other to be separated, or merely as payment of the debt due him, but intended having the entire stock for the purpose of carrying on the business and making out of it more than the price to him and all incidental expenses. The purchase of this part was therefore not ancillary to the collection of his debt merely, but for a further and distinct purpose. If the other was not sufficient to pay his debt without deduction for necessary expenses in converting it, he should have required more goods for that purpose and taken the risk of its effect upon the question of his good faith and fairness, if such a question should arise. He deliberately accepted them at cost price in full satisfaction of his debt, and should be estopped to say he was compelled to purchase more in order to satisfy it.

There was evidence clearly and strongly tending to prove that appellee was directly informed by Royster himself of his financial embarrassment. He had testified in the County Court that he knew of claims other than his own, amounting to $1,200, and further admitted on the trial in the Circuit Court that at the time it was made, he thought there might be some trouble with the creditors about this sale, though not very much; that he told Noll, after he left Anchor, to let him know at once in case they did anything, and that he did not come there to collect his debt alone, but to help Royster out also. This was all from his own lips and under oath.

Other evidence, with like force, tended to prove that he knew Royster had no other property, and that if he held under this sale the inevitable effect must be to hinder and delay other creditors; and knew that Royster must have so understood, and therefore must so have intended. A sale with such intent on the part of the seller, and such knowledge or notice of it on that of the purchaser, is fraudulent and void as to creditors of the former.

With this evidence before them, and a proper understanding of the law applicable to it, we do not see how the verdict could honestly be found. Not to impute dishonesty, we must infer misunderstanding.

We think that some of the instructions given for appellee, as appears in this case, were lacking in discrimination and liable to mislead a jury. Thus, the second was, that if Royster owed Dunlap, and Dunlap assumed his other debts mentioned and gave him his note for the balance of the price, "then such considerations, if in good faith, were as valid for the purchase of said goods by Dunlap as if he had paid for them in cash, or in any other way." The condition, "if in good faith," as here used, could hardly mean more than if the considerations paid were not shams but really what they purported to be, and were paid to Royster in good faith as respected him. That they were so was not made a question in the case, and it is clear that such payment made the sale valid as between the parties. But the conclusion, as stated, was not so qualified by the instruction. It made no reference whatever to the remaining creditors of Royster, and if the court did not take them into account why should the jury be expected to do so?

One of the hypotheses assumed in the fourth was, that what Dunlap did was for the sole purpose of collecting his debt. We find in the record no evidence to warrant the assumption.

The seventh stated that Dunlap was "not bound by bad faith or wrongful acts of Royster, if any, not participated in by him." Might not a jury mistake this for a declaration by the court that Dunlap did not participate? We think

" unless" or " if not " participated in, would have been bet-
ter.   Besides, the instruction failed to explain what consti-
tutes participation in such a case; and the ninth is subject to
the same criticism.   Nowhere in appellee's instructions is
it intimated that notice to the purchaser of the fraudulent
intent of the seller would make him a participant, in the
view of the law, whether he was actually so in fact or not.

That which, in these instructions, was perhaps most likely
to mislead the jury, was the prominence they give to appel-
lee's position as a creditor rightfully preferred to others by
their common debtor, rather than that of a purchaser strictly,
which he also clearly occupied, and which presented the
real issue; for only as such purchaser was his knowledge of
a fraudulent intent on the part of Royster with reference to
his creditors material, and the question of such knowledge
was the vital question in the case.

But whatever may have been the cause of it, this verdict
was, in our judgment, so manifestly against the law and the
evidence that it should not have been allowed to stand.

Every material point here involved, seems so fully covered
and disposed of by the case of Hanchett v. Goetz, 25 Ill. App.
445, and the same on another appeal, 40 Id. 206, that we
deem it unnecessary to refer to any other.

For the reasons above stated, the judgment will be re-
versed and the cause remanded.